Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5047 | **DATE** | 3/4/2002 |
| **CASE TITLE** | RIAN DAVIS vs. TEAMSTERS LOCAL UNION NO. 705, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Teamsters Local Union No. 705's motion for summary judgment [14-1] and United Parcel Service, Inc.'s motion for summary judgment [10-1] are granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 05 2002 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 3/4/2002 | |
| | Copy to judge/magistrate judge. | 02 MAR -4 AM 10:04 | date mailed notice | |
| CB | courtroom deputy's initials | | CB | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RIAN DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 5047 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| TEAMSTERS LOCAL UNION NO. 705, et al. | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED MAR 0 5 2002

## MEMORANDUM OPINION AND ORDER

Rian Davis ("Davis") sues Teamsters Local Union No. 705 ("Local 705") and United Parcel Service, Inc. ("UPS") for violations of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Specifically, Davis claims UPS breached the collective bargaining agreement with Local 705 by terminating him without just cause. Davis also claims Local 705 breached its duty of fair representation by failing to adequately contest his termination. UPS and Local 705 move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

The following facts are undisputed. UPS hired Davis as a preloader at its Addison, Illinois center in October 1987. As a preloader, Davis loaded packages into delivery trucks. In 1989, Davis also assumed duties as a presorter. As a presorter, Davis sorted packages by delivery address.

Local 705 represents certain UPS employees in Illinois, including Davis. A collective bargaining agreement ("CBA") between UPS and Local 705 governed the terms and conditions of Davis' employment. The CBA provides:

[UPS] shall not discharge or suspend any employee without just cause. No employee

1

shall be suspended or discharged without first being verbally warned and the warning
being documented, except for the following offenses [list of cardinal infractions
omitted].

Under the CBA, suspension or discharge for conduct other than for a cardinal infraction must be preceded by a verbal warning documented during the previous nine months. The CBA also includes a three step grievance procedure to address any questions under the contract, including whether UPS discharged an employee for "just cause."

In addition to the CBA, UPS maintains a workplace violence prevention policy which provides, in part:

> UPS prohibits physical assaults (fights), threatening comments, intimidation and the intentional destruction of any company property, employee's property, or merchandise. Any comments or behavior that reasonably could be interpreted as an intent to do harm to employees or property will be considered a threat.

The policy further provides that any violation of the policy will result in disciplinary action, up to and including termination.

On March 18, 2000, Davis and supervisor Marcus Ealey were yelling at each other about a sorting issue when Davis slid a large package across the floor at Ealey. Davis received a verbal warning from Ealey. Ealey documented the verbal warning in Davis' file.

On May 17, 2000, Ealey asked Davis why he was not keeping up on the box line. Davis claimed he was trying to help the employee next to him. Ealey told Davis he needed to focus on completing his own work. Davis became upset when Ealey began helping him with the packages. Davis shoved a package within six inches of Ealey's face, telling him "here, this isn't mine, take it and get the fuck out of my face." Davis then told Ealey he was not God and he should stop acting like God. At some point, Davis also told Ealey "to get the fuck away" and "fuck you." When Davis

2

tried to leave the area, he brushed shoulders with Ealey. Ealey claimed Davis pushed him into the box line.

Ealey's direct supervisor, Jim Luzinski, began an investigation into the incident between Davis and Ealey. However, Luzinski was in business meetings for the next two days and on vacation the following week. Upon his return, his substitute, Dave Tepper, informed him the issue between Davis and Ealey had been resolved.

Thereafter, Ealey complained to Luzinski about Davis not being disciplined for the incident based on his previous disciplinary history. In response, Luzinski reopened the investigation. Thereafter, Luzinski terminated Davis on June 19, 2000 for violation of the workplace violence prevention policy.

Local 705 filed a grievance on behalf of Davis contesting his termination. UPS agreed to reduce Davis' termination to a four day suspension. UPS documented Davis' suspension in his file.

On January 4, 2001, center manager Wayne Zimmerman was near the time clock speaking with supervisor Russ Lo Verde when Davis finished his shift. Without punching out, Davis walked by the time clock, put on his coat and began a conversation with another employee. Zimmerman told Davis to punch out. Davis did not do so. Zimmerman once again told Davis to punch out. Instead of punching out, Davis asked Zimmerman "is this the way you treat me for the work I did today?" Zimmerman expressed his dissatisfaction with Davis' work because unloaded packages remained on the dock.

Davis walked briskly toward Zimmerman. At that time, Lo Verde directed Davis toward the time clock while asking him for information regarding a payroll issue. Zimmerman then told Davis to punch out for the third time. After Davis punched out, he yelled "fuck you" at Zimmerman and

3

forcefully threw a piece of chicken down on the floor in an act of defiance. Zimmerman considered Davis' actions to be physically and verbally threatening, intimidating and inappropriate for the workplace.

The next day, Davis and Local 705 steward Don Belcher met with Zimmerman to discuss the previous day's events. Zimmerman terminated Davis' employment for violating the workplace violence prevention policy. During the meeting, Davis lost control. Zimmerman asked Davis several times not to raise his voice. Davis was "mad," "frustrated" and "very, very upset." At the conclusion of the meeting, Davis "whipped" his employee identification card at Zimmerman and stormed out of the office. Davis' employee identification card hit Zimmerman in the corner of his eye. Zimmerman then completed an employee separation form, listing Davis' conduct on January 4, 2001 and January 5, 2001 as the basis for his termination.

Belcher filed a grievance on behalf of Davis contesting his termination. Belcher once again approached Zimmerman to determine whether Zimmerman would consider a five day suspension rather than termination. Zimmerman declined based on Davis' history of similar conduct.

Local 705 represented Davis at the first step hearing regarding his grievance. During the hearing, Davis acknowledged a problem with his temper and claimed he was taking action to resolve the problem, and was seeing a psychologist. Davis apologized to Zimmerman and others present for his actions on January 4, 2001 and January 5, 2001. Davis also stated that he understood "why [UPS] had to do what they were doing." UPS and Local 705 could not reach an agreement regarding Davis' grievance.

Local 705 also represented Davis at the second step hearing before the UPS/Local 705 Joint Grievance Committee ("committee"). The committee awarded Davis back pay under the CBA, but

4

declined to reinstate him. The committee voted to sustain Davis' termination because Davis, who had been previously suspended for violating the workplace violence prevention policy, physically and verbally acted in a threatening manner on January 4, 2001 and January 5, 2001. The committee's unanimous decision terminated Davis' grievance before reaching arbitration, the third step of the grievance process under the CBA.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### II. Breach of the CBA

Section 301 of the Labor Management Relations Act confers jurisdiction on the district court to enforce the terms of collective bargaining agreements. 29 U.S.C. § 185. Where the employee has

sued both the employer for breach of the collective bargaining agreement and the union for breach of its duty of fair representation, the suit is considered a "hybrid 301" action. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997). In order to succeed in this hybrid 301 action, Davis must prove both of his claims. See *Id.*

Under the CBA, UPS may terminate an employee for "just cause" after documenting one verbal warning within the preceding nine month period. "Just cause is a flexible concept, embodying notions of equity and fairness." *Crider,* 130 F.3d at 1241, *quoting Arch of Illinois, Div. of Apogee Coal Corp. v. District 12, United Mine Workers of America,* 85 F.3d 1289, 1294 (7th Cir. 1996). In order to be just, the penalty must be consistent with the seriousness of the offense. *Id.* at 1242.

Davis contends that his termination was not for just cause because he did not receive an adequate verbal warning documented within the preceding nine month period. Specifically, Davis claims that the conduct resulting in his suspension was not sufficiently comparable to the conduct prompting his termination to constitute progressive discipline under the CBA. *See, e.g., Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403 (7th Cir. 1992)("The purpose of progressive discipline is to give the employee adequate notice and opportunity to correct any deficiencies").

Davis' prior suspension placed him on notice that similar conduct could ultimately lead to his termination. On both occasions, UPS terminated Davis after he escalated a verbal altercation with a supervisor into physical action. The first time, UPS reduced Davis' termination to a suspension at Local 705's request. The second time, UPS declined to reconsider Davis' termination based on his previous conduct, which included his verbal and physical assault on Zimmerman at the termination meeting. Under these circumstances, Davis cannot claim surprise over his termination.

To the contrary, Davis acknowledged during the grievance process he understood "why UPS had to do what they were doing."

As a matter of law, UPS had just cause to fire Davis for his conduct. The penalty of termination, imposed approximately seven months after Davis' suspension for similar conduct, was consistent with the seriousness of the offense. *See Crider*, 130 F.3d at 1242. This conclusion also resolves the case for Local 705. *Id.* ("Where the court is well able to decide that the employee's contractual claim lacks merit as a matter of law, it is appropriate for the court to decide the case on that issue").

## CONCLUSION

Local 705 and UPS are entitled to judgment as a matter of law on all claims advanced by Davis.

March 4, 2002

ENTER:

Suzanne B. Conlon
United States District Judge